**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SILEC CABLE S.A.S, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 12-01392 |
| | ) | Judge Nora Barry Fischer |
| ALCOA FJARDAAL SF, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

I.   INTRODUCTION

This case involves a dispute between two international entities arising from an explosion and fire at an aluminum smelter facility owned by Defendant Alcoa Fjardaal, SF ("Alcoa Fjardaal") near Reydarfjordur, Iceland on December 18, 2010.  (Docket No. 1).  Alcoa Fjardaal initiated an arbitration proceeding under the Rules of the International Chamber of Commerce ("ICC") against Plaintiff Silec Cable S.A.S. ("Silec") on July 31, 2012, alleging that the explosion and fire were caused by a latently defective product supplied by Silec in breach of a Purchase Order between the parties under which Silec supplied cables and cable terminations for the facility.  (*Id.* at ¶ 5).  Silec responded by filing suit against Alcoa Fjardaal in the Court of Common Pleas of Allegheny County, Pennsylvania on September 7, 2012, seeking to stay or enjoin the arbitration and a declaration that Alcoa Fjardaal's claims are not arbitrable and that Silec bears no liability for the explosion and fire.  (Docket No. 1-1).  Alcoa Fjardaal has removed the state case to this Court, while the international arbitration remains ongoing.  (Docket No. 1).

There are two motions presently before the Court: (1) a motion to dismiss filed by Alcoa Fjardaal, (Docket No. 4); and (2) a motion to remand filed by Silec, (Docket No. 7).  Silec argues that this case should be remanded because the Court lacks subject matter jurisdiction over its Complaint.  (Docket No. 8).  Alcoa Fjardaal counters that the case should be dismissed because the Court lacks personal jurisdiction over it, or alternatively, for failure to state a claim upon which relief may be granted.  (Docket No. 5).  For the following reasons, Silec's motion to remand [7] is denied and Alcoa Fjardaal's motion to dismiss [4] is granted.

## II.  RELEVANT FACTUAL BACKGROUND

Silec is a French entity that is a subsidiary of General Cable Corp., a United States company.  (Docket No. 1 at ¶ 4; Docket No. 1-1 at ¶ 12).  Silec is a "manufacturer of insulated cable systems." (Docket No. 1-1 at ¶ 12).  Alcoa Fjardaal is an Icelandic entity and an affiliate of Alcoa, Inc., an aluminum manufacturer headquartered in Pittsburgh, Pennsylvania. (*Id.* at ¶¶ 1, 13).  Alcoa Fjardaal was created by Alcoa, Inc. to operate an aluminum smelter plant in Reydarfjodur, Iceland, a small town on the east coast of Iceland.  (*Id.* at ¶¶ 1, 21).  Alcoa Fjardaal engaged Bechtel International Inc. and Bechtel Overseas Corporation (collectively, "Bechtel") to design and build the facility by performing engineering, procurement and project management.  (*Id.* at ¶¶ 23-25).  Bechtel entered into two agreements on Alcoa Fjardaal's behalf which are relevant to this case, a Purchase Order and a Services Contract.  (*Id.* at ¶ 26).

On December 16, 2005, Bechtel, as an agent of Alcoa Fjardaal, entered into a Purchase Order with Sagem S.A. ("Sagem") for the supply of certain equipment for the construction of the plant.  (*Id.* at ¶¶ 26-27).  The Purchase Order provides for Sagem to design, manufacture, factory test and deliver high voltage power cables and cable termination equipment for the plant.[1]  (*Id.* at

---

[1]     Silec alleges that Bechtel engaged Fuji Electric ("Fuji") to manufacture and install "a 220 kV transformer and cable junction box at the plant."  (Docket No. 1-1 at ¶ 54).  The cable terminations supplied by Silec were

¶ 27).  Although Silec was not a signatory to this agreement, it later took over the contract from Sagem and designed, manufactured, factory tested and delivered high voltage power cables and cable termination equipment for the project.  (*Id.* at ¶¶ 26, 29, 49, 52).  Silec maintains that the Purchase Order did not require installation of these products but specified that its responsibilities ended upon their delivery.  (*Id.* at ¶ 52).

Relevant here, the Purchase Order provides that it is governed by Pennsylvania law.[2] (Docket No. 1-1 at 74; *Purchase Order* at § 4A, ¶ 17).  There is also no cap on liability set forth in this agreement.  Importantly, the Purchase Order contains a dispute resolution provision, which provides, in pertinent part, that:

> ***Any claim arising out of or attributable to the interpretation or performance of this AGREEMENT, which cannot be resolved by negotiation shall be considered a dispute within the meaning of this clause.***
>
> If for any reason BUYER and SELLER are unable to resolve a claim for an adjustment, BUYER or SELLER shall notify the other party in writing that a dispute exists and request or provide a final determination by BUYER. Any such request by SELLER shall be clearly identified by reference to this clause and shall summarize the facts in dispute and SELLER's proposal for resolution.
>
> BUYER shall, within ten (10) calendar days of any request by SELLER, provide a written final determination setting forth the contractual basis for its decision and defining what adjustments it considers equitable. Upon SELLER'S written acceptance of BUYER'S determination the AGREEMENT will be modified and the determination implemented accordingly or, failing agreement, BUYER may in its sole discretion pay such amounts and/or revise the time for performance of the work in accordance with BUYER'S final determination.

---

installed into the cable junction box provided by Fuji.  (*Id.*).  Fuji also completed maintenance work at the plant between its completion in 2007 and the explosion and fire in December of 2010.  (Docket No. 1-1 at ¶¶ 72-76).

[2]      Section 17, titled, Applicable Law, provides that "[t]he definition of terms used, interpretation of this AGREEMENT and rights of the parties hereunder shall be construed under and governed by the laws of the jurisdiction of the State of Pennsylvania, USA."  (Docket No. 1-1 at 74; *Purchase Order* at § 4A, ¶ 17).

If BUYER'S final determination is not accepted by SELLER, the matter shall, be referred to senior executives of the parties who shall have designated authority to settle the dispute. If the dispute remains unresolved, the Parties agree that the dispute shall be referred to mediation by a mediator agreed by the Parties with the mediation to be conducted as agreed between the Parties ("Mediation"). The Mediation shall last no more than three (3) calendar days unless the Parties agree to an extension of time. The costs of the Mediation (including the Mediator's fees, mediation premises and other related costs) shall be borne equally by the Parties. The Parties agree to use their best endeavors and to negotiate in good faith to resolve any dispute at Mediation and will ensure that their respective representatives involved in any Mediation have full power and authority to settle the dispute.

***If the dispute has not been resolved within seven (7) calendar days of the conclusion of the Mediation convened, the Parties agree that the dispute shall and is hereby referred to binding arbitration by three arbitrators. One each shall be selected by the Parties who shall endeavor to agree selection of the third failing, which the third shall be referred to and selected by the International Chamber of Commerce under ICC ("Arbitration").***

***The Arbitration shall be conducted in accordance with the rules of the ICC and shall be held in Pittsburgh, Pennsylvania and the decision of the Arbitration shall be final and conclusive save where ICC rules permit appeal therefrom.***

(Docket No. 1-1 at 79; *Purchase Order* at § 4B, ¶ 10 (emphases added)).

On August 11, 2006 Bechtel, as agent of Alcoa Fjardaal, and Silec entered into a Construction Services Order ("the Services Contract") for installation of the cable termination equipment which was previously delivered under the Purchase Order. (Docket No. 1-1 at ¶ 56; Exhibit B to Complaint). The Services Contract contains a limited warranty clause, wherein "[Silec] warrants that all equipment and material it furnishes and all work it performs against defects in design, equipment, materials or workmanship for a period from Work commencement to a date twelve (12) months after completion and acceptance of the Fjardaal project as a whole." (*Id.* at ¶ 64). This agreement also contains a provision which limits Silec's liability and damages

for its work under the project and provides that Silec's "total aggregate liability arising out of or in connection with this contract shall not exceed 10% of the total amounts paid to [Silec] under the [contract]." (*Id.* at ¶ 62). Silec avers that its total compensation under the Services Contract was $600,000.00, thus, capping its potential liability to Alcoa Fjardaal for any alleged breach of the Services Contract at $60,000.00. (*Id.* at ¶ 63).

Silec maintains that it completed all of its obligations under the Services Contact by March 16, 2007 and Bechtel accepted its work. (*Id.* at ¶¶ 65-66). The plant was completed in 2007 and began production. (*Id.* at ¶ 67). Aloca Fjardaal operated the plant for over three years (from June of 2007 through December 2010) without contacting Silec, or its related entity, General Cable, to advise Silec of any problems (real or perceived) with its products or work. (*Id.* at ¶¶ 69-71).

On December 18, 2010, an explosion and fire occurred at the plant, causing widespread damage to the physical structures and forcing a reduction in aluminum production at the plant for an extended period of time. (*Id.* at ¶¶ 1, 77; Docket No. 5 at 4-5). Alcoa Fjardaal alleges that it sustained losses in excess of $18 million in direct and consequential damages. (Docket No. 1-1 at ¶ 77). However, shortly after the incident, Alcoa Fjardaal determined that its insurance coverage had a $50 million deductible. (Docket No. 1-1 at ¶¶ 2, 78-80). The company also recognized that the one-year warranty under the Services Contract with Silec had expired. (*Id.* at ¶ 79). Given same, Alcoa Fjardaal started to investigate whether the products provided by Silec had a latent defect. (*Id.* at ¶ 80).

Alcoa Fjardaal first engaged Kevin Kennedy Associates ("KKA") to investigate the cause of the explosion and fire. (*Id.* at ¶ 82). Silec maintains that after examining the site and artifacts, KKA determined that "the fire originated from a failure of electrical insulation within one of the

cable termination assemblies and that the fire most probably happened during installation." (*Id.* at ¶¶ 83-84). KKA also allegedly "concluded that a cable insulator (provided and installed by Silec) was cracked before Fuji performed maintenance work in 2008 or 2009." (*Id.* at ¶ 87). A second company, KEMA Nederland B.V. ("KEMA") was engaged to review KKA's work and to further investigate the fire. (*Id.* at ¶ 85). According to Silec, KEMA identifies three points in time when the cracking of the epoxy insulator may have occurred, including: "(1) during transportation; (2) during installation; or (3) during maintenance work of Fuji carried out in 2008/2009." (*Id.* at ¶ 89).

On March 16, 2012, Alcoa Europe, a division of Alcoa, Inc., wrote to Silec's parent company, General Cable, about the explosion and fire at the plant and, relying on the reports produced by KKA and KEMA, claimed that the damage was caused by Silec's products. (*Id.* at ¶¶ 93-95). The letter also suggested that the parties were required to first mediate under the Dispute Resolution provision in the Purchase Order. (*Id.* at ¶ 96). Silec responded through an April 12, 2012 letter, denying any liability for the fire and arguing that, "to the extent that Alcoa was claiming that the insulator cracked during installation by Silec, the installation was covered by a separate stand-alone agreement that did <u>not</u> contain any agreement to arbitrate." (*Id.* at ¶ 98).

Months passed without further correspondence between the parties. (*Id.* at ¶ 99). Then, on July 31, 2012, Alcoa Fjardaal served an arbitration demand on Silec.[3] (*Id.* at ¶ 99). In its demand, "Alcoa Fjardaal alleges that the fire was caused by a latently defective cable termination product supplied by Silec Cable under the Purchase Order and in breach of the Purchase Order's express warranty." (Docket No. 5 at 10). Alcoa Fjardaal claims that it is

---

[3]    Alcoa Fjardaal initially named Sagem as a defendant in the arbitration. (Docket No. 11 at n.2). It has since advised the ICC that it will dismiss the claims against Sagem and proceed against Silec, only. (*Id.*).

entitled to damages in excess of $18,000,000.00.  Silec responded initially by advising the ICC

that the dispute was not arbitrable, arguing that arbitrability was a matter to be decided by the

courts and requesting an extension of time to fully respond to the demand.  (Ex. 1 to Motion to

Remand).  The ICC answered that it would take no action on Silec's arguments until it first

nominated an arbitrator.  (Ex. 2 to Motion to Remand).  Silec nominated Judge Abraham Gafni

as an arbitrator on September 7, 2012 and Silec was granted an extension to file its answer until

October 11, 2012.[4]  (Docket No. 5 at 10).  Silec did so along with a disclaimer that it was not

waiving the right or conceding that the dispute was arbitrable.  (Ex. 2 to Motion to Remand).

Through the state action, which is now before this Court after removal, Silec maintains

that Alcoa Fjardaal's claims against it do not fall within the arbitration provision of the Purchase

Order.  (Docket No. 1-1 at ¶¶ 100, 114-157).  Silec argues that the Services Contract controls and

that the limited one-year warranty provided under that agreement has long since expired.  (*Id.*).

Silec requests that the Court order the following relief:

1. Stay or enjoin the Pennsylvania Arbitration, pending a
   resolution of whether Alcoa's claim is arbitrable;

2. Declare that Alcoa's claim is not arbitrable; and,

3. Declare that Silec has no liability for any alleged damages that
   resulted from the December 18, 2010 explosion.

(Docket No. 1-1 at ¶¶ 157(A)-(D), 163(A)-(D), 173(A)-(D)).

III. PROCEDURAL HISTORY

Silec initiated this case by filing its Complaint in the Court of Common Pleas of

Allegheny County on September 7, 2012.[5]  (Docket No. 1-1).  Alcoa Fjardaal then removed the

---

[4]     The answer has not been filed with this Court as an attachment to the pleadings but counsel for Alcoa
Fjardaal asserts that it has since been submitted to the ICC.  (*See* Docket No. 10 at 9).
[5]     The Court notes that Silec attached a number of documents to its Complaint, including: (1) Alcoa
Fjardaal's arbitration demand; the Purchase Order; Report of Kevin Kennedy Associates; Report of KEMA; April
12, 2012 Letter from Silec to Alcoa; the Services Contract; a December 30, 2010 PowerPoint Presentation titled

case to this Court on September 25, 2012. (Docket No. 1).  The next day, Alcoa Fjardaal filed its Motion to Dismiss and Brief in Support, seeking dismissal of Silec's Complaint under Rules 12(b)(2) and 12(b)(6).  (Docket Nos. 4, 5).  Silec filed its Motion to Remand and Brief in Support on October 10, 2012.  (Docket Nos. 7, 8).  Silec later responded to the motion to dismiss by filing a Brief in Opposition on October 22, 2012.  (Docket No. 9).  Alcoa Fjardaal subsequently filed its Brief in Opposition to the motion to remand (Docket No. 10) and a Reply Brief in support of its own motion to dismiss (Docket No. 11).  Silec then filed a Reply Brief in support of its motion to remand on November 14, 2012.  (Docket No. 12).  Finally, Alcoa Fjardaal filed a sur-reply brief on November 21, 2012 in response to the Court's order requesting same. (*See* Docket Nos. 13, 14).

As all briefing has concluded, the pending motions are now ripe for disposition.

IV. DISCUSSION

The Court will first address the motion to remand through which Silec challenges this Court's subject matter jurisdiction to preside over this dispute.  (Docket Nos. 7, 8).  Second, the Court will discuss the motion to dismiss filed by Alcoa Fjardaal to the extent that it asserts that personal jurisdiction is lacking and third, the Court will analyze Alcoa Fjardaal's contention that the removed Complaint fails to state a claim upon which relief may be granted.  (Docket Nos. 4, 5).  The applicability of the Purchase Order's arbitration clause is featured prominently throughout the parties' arguments on each of these legal issues.  The relevant portions of that provision state that:

---

"Regulating Transformer RF12 Investigation"; and, a March 12, 2012 letter from Alcoa to Silec.  (*See* Docket Nos. 1-1:1-4).  Therefore, as these documents are attached to the Complaint, they may be considered by the Court in its analysis of the present motions, including the motion under Rule 12(b)(6).   *See Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

> Any claim arising out of or attributable to the interpretation or performance of [the Purchase Order] … shall be considered a dispute.
>
> …
>
> [Any] dispute shall and is hereby referred to binding arbitration by three arbitrators. One each shall be selected by the Parties who shall endeavor to agree selection of the third failing, which the third shall be referred to and selected by the International Chamber of Commerce under ICC ("Arbitration").
>
> The Arbitration shall be conducted in accordance with the rules of the ICC and shall be held in Pittsburgh, Pennsylvania and the decision of the Arbitration shall be final and conclusive save where ICC rules permit appeal therefrom.

*Purchase Order* at § 4B, ¶ 10.

### a. Silec's Motion to Remand

Alcoa Fjardaal has set forth alternative statutory bases in support of its removal of this case, i.e., 9 U.S.C. §§ 203 and 205 as well as 28 U.S.C. §§ 1441 and 1447.   (Docket No. 1).  Silec maintains that this Court lacks subject matter jurisdiction over the case such that the removal is improper.  (Docket Nos. 7, 8, 12).  To resolve this dispute, the Court initially turns to the appropriate legal standard governing motions to remand.

### i. Legal Standard on Motion to Remand

Federal courts are of limited jurisdiction and "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."  *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citations omitted).   Relevant here, the general removal statute, 28 U.S.C. § 1441(a), provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."  28 U.S.C. § 1441(a).  The Federal Arbitration Act (the "Act") specifies that

"[a]n action or proceeding falling under the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention")] shall be deemed to arise under the laws and treaties of the United States."  9 U.S.C. § 203.  Section 205 of the Act addresses removal of cases under the Convention, as follows:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205.  Thus, any case which "relates to an arbitration agreement or award falling under the Convention" is removable if the "ground for removal" is set forth in either the plaintiff's complaint or the defendant's petition for removal.  *Id.*  28 U.S.C. § 1447 outlines the necessary procedures to effectuate a proper removal and also states that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

   ii. <u>Analysis of Motion to Remand</u>

   In all, although Silec is the party which has filed the motion to remand, it is Alcoa Fjardaal's burden to demonstrate that its removal was properly made in accordance with the foregoing principles.  Silec contends that this burden has not been met because its case seeks only to: (1) enjoin the arbitration; (2) declare that Alcoa's claims are not arbitrable; and, (3) declare that it has no liability to Alcoa as a result of the fire and explosion at the plant. (Docket

Nos. 7, 8).  Silec believes that the injunction and declarations it seeks do not fall within the jurisdiction afforded to district courts under sections 203 and 205 of the Act.  (*Id.*).  Alcoa Fjardaal counters that its removal under section 205 is proper as it seeks to raise a well-pleaded federal defense to Silec's claims in its notice of removal based on the arbitration clause in the Purchase Order.  (Docket No. 10).  Alcoa Fjardaal further argues that removal is permitted under section 203 because it has filed a motion to dismiss Silec's Complaint, the granting of which would have the same effect of a motion to compel arbitration.  (*Id.*).  In addition, Alcoa Fjardaal asserts that it will file a motion to compel arbitration in the event that its motion to dismiss is denied and clarifies that it has not done so to this point only because Silec is participating in the arbitration and the arbitration remains pending before the ICC.  (*Id.*).

Having considered the parties' positions and the relevant statutes and caselaw, the Court finds that this action was properly removed by Alcoa Fjardaal under section 205.  *See* 28 U.S.C. § 205.  As such, Alcoa Fjardaal has met its burden to demonstrate that removal is proper and the Court need not directly address the parties' alternative arguments as to whether section 203 also affords a proper basis for removal in this case.  *See Frederico*, 507 F.3d at 193.

With respect to section 205, Silec summarily asserts that its Complaint does not "relate to" an arbitration agreement or arbitration award because the claims in dispute are outside the scope of the Purchase Order. (*See* Docket No. 8).  Silec's position is largely fact-based in that it suggests that the Court should rule that the Services Contract controls the parties' relationship rather than the Purchase Order and, after reaching this result, enjoin the arbitration and declare that it has no liability in this matter.  (*Id.*).  In contrast, Alcoa Fjardaal has cited persuasive authority that the phrase "relates to" under section 205 should be broadly construed to encompass its arbitration defense to Silec's claims set forth in its Notice of Removal.  (Docket

No. 10).  Silec has attempted to distinguish this authority, but the decided cases clearly favor

Alcoa Fjardaal's position.

To this end, the Court agrees with the analysis by the United States Court of Appeals for

the Ninth Circuit in *Beiser v. Weyler et al.*, 284 F.3d 665 (5th Cir. 2002).  In *Beiser*, the Court of

Appeals applied the plain meaning of the phrase "relates to" and concluded that it sweeps

broadly enough to encompass a defense raised by a party under the Convention which "could

conceivably affect the outcome" of the case.  *Id.* at 669.  The Court of Appeals further explained

that:

> whenever an arbitration agreement falling under the Convention
> could conceivably affect the outcome of the plaintiff's case, the
> agreement "relates to" to the plaintiff's suit. Thus, the district court
> will have jurisdiction under § 205 over just about any suit in which
> a defendant contends that an arbitration clause falling under the
> Convention provides a defense. As long as the defendant's
> assertion is not completely absurd or impossible, it is at least
> conceivable that the arbitration clause will impact the disposition
> of the case. That is all that is required to meet the low bar of
> "relates to."

*Id.* at 669-70.  The *Beiser* Court also acknowledged that the determination of whether such a

defense "relates to" a case should be determined from the petition for removal and the pleadings

alone, rather than undertaking a merits-based inquiry at this stage of the case.  *Id.* at 674-75.

Although the United States Court of Appeals for the Third Circuit has not directly

addressed the import of *Beiser* nor interpreted the phrase "relates to" as it is used in section 205,

the United States Courts of Appeals for the Eighth and Ninth Circuits have adopted the rationale

in *Beiser*, *see e.g.*, *Reid v. Doe Run Resources Corp.*, --- F.3d ----, 2012 WL 5476836, at *2 (8th

Cir. Nov. 13, 2012), *Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc.*, 631 F.3d 1133 (9th

Cir. 2011), as have district courts within the Third Circuit, *see e.g.*, *Century Indem. Co. v.*

*Certain Underwriters at Lloyd's, London*, Civ. A. No. 05-6004, 2006 WL 6667385, at *2 (E.D.

Pa. May 18, 2006), *Amato v. KPMG LLP, el al.*, 433 F. Supp. 2d 460 (M.D. Pa. Jun. 13, 2006), *order vacated in part on reconsideration on other grounds*, 2006 WL 2376245 (M.D. Pa. Aug. 14, 2006).   Agreeing with these decisions, the Court will likewise follow *Beiser*.   This result is further supported by the plain language of section 205, which affords defendants the ability to remove a case that "relates to an arbitration agreement or award under the Convention" and expressly obviates the requirement in a typical removal case that subject matter jurisdiction be determined from the face of the well-pleaded complaint, without reference to the defenses raised. *See* 9 U.S.C. § 205; *see also Beiser*, 284 F.3d at 669.

The Court also finds that the cases upon which Silec relies in its motion and brief in support, (Docket No. 7, 8), are distinguishable from the instant matter, non-binding and unpersuasive.   In particular, Silec relies heavily on *URS Corp. v. Lebanese Co. for Development and Reconstruction of Central District Sal*, 512 F. Supp. 2d 199 (D. Del. 2007).   However, *URS* is inapposite because that case did not involve a challenge to the propriety of a removal but rather was a case initially filed by URS in federal district court.   *Id.*   As such, section 205 – and its pronouncement that the defenses raised by a party must be considered when determining subject matter jurisdiction – was not implicated.   *Id.*   The district court in *URS* was therefore confined to review the plaintiff's complaint to establish subject matter jurisdiction and, as the plaintiff was not seeking to compel arbitration or enforce an arbitration award but to enjoin an arbitration proceeding, the case was appropriately dismissed.   *Id.*   While Silec's Complaint is akin to the plaintiff's complaint in URS and its well-pleaded averments are likely not sufficient for this Court to exercise subject matter jurisdiction over Silec's Complaint under section 203, Alcoa Fjardaal's defense must also be considered by the Court in determining whether subject matter jurisdiction has been properly invoked pursuant to section 205.

The Court further notes that the decision cited by Silec in its Reply, (Docket No. 12), *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038 (N.D. Cal. 2006), does not undermine this holding.  In *Hawkins*, the district court was critical of the breadth of the language used in *Beiser*, suggesting that its disavowal of any merits-based inquiry was "both misleading and analytically unhelpful" given that courts are frequently called upon "to make factual inquiries in order to evaluate subject matter jurisdiction," particularly when the question of jurisdiction is tied to the merits of a dispute. *Id.* at 1045.  The *Hawkins* court noted, however, that despite the language in *Beiser* which indicates that courts need not make any inquiry into the facts, it believed that the Court of Appeals had actually conducted a "preliminary exploration of whether arbitration might ultimately be compelled" by reviewing the defense, pleadings and the challenged arbitration provision.  *Id.* at 1045-46.  Ultimately, the *Hawkins* court reasoned that "in order to establish jurisdiction defendants must show, based on the pleadings and petition for removal, as well as judicially noticeable materials, that there is a reasonable possibility that defendants will be able to assert the arbitration clause to compel arbitration of plaintiff's claims in th[e] lawsuit."  *Id.* at 1047.  It further defined "reasonable possibility" as "something more than a 'frivolous' or 'fanciful' argument."  *Id.*

In this Court's estimation, there is very little difference between the decisions in *Beiser* and *Hawkins*, as both courts suggest that some inquiry into Alcoa Fjardaal's defense is necessary to determine whether it "relates to" an arbitration agreement under the Convention.  Indeed, the slight variances between those decisions pertain more to the language used by the courts rather than the procedures employed.  *Beiser* holds that a case is properly removed under section 205 if an agreement under the Convention "could conceivably affect the outcome" of the case, *Beiser, 284* F.3d at 669, while *Hawkins* states that there must be a "reasonable possibility" that a

14

defendant would be able to assert the clause and compel arbitration in the case, *Hawkins*, 423 F. Supp. 2d at 1047.   It is significant that neither court approves a full-fledged resolution of the merits of the arbitration defense at the jurisdictional stage but both favor only a limited inquiry into whether the arbitration clause is legitimately raised as a defense to the case.   *See Beiser*, 284 F.3d at 669; *see also Hawkins*, 423 F. Supp. 2d at 1047.

Here, Silec has essentially proposed that the Court resolve the parties' dispute as to whether the Purchase Order or the Services Contract controls this case in the context of the motion to remand challenging subject matter jurisdiction.   The Court declines to do so as Alcoa Fjardaal has established that its defense "relates to" the arbitration provision under the Purchase Order and that removal of this case was proper under section 205, regardless of whether *Beiser* or *Hawkins* is adopted.

In this Court's view, Alcoa Fjardaal's arbitration defense set forth in its Notice of Removal is sufficient to demonstrate that it "relates to" an arbitration agreement under the Convention.   The arbitration provision in the Purchase Order plainly sets forth that *any* dispute between the two international entities should proceed to arbitration under the ICC and in accordance with ICC Rules.   *Purchase Order* at § 4B, ¶ 10. In its arbitration demand, Alcoa Fjardaal asserts that Silec breached an express warranty under the Purchase Order and is seeking to recover for said breach in accordance with the arbitration provision in that agreement. (Docket No. 1-2).   Silec has not argued that the arbitration provision in the Purchase Order is unenforceable or unconscionable, was obtained through forgery or fraud or is defective in some other manner.   (Docket Nos. 7, 8).   As the Court has already discussed, Silec has instead set forth a merits-based defense that Alcoa Fjardaal's claims in the arbitration demand do not fall within the scope of the Purchase Order but arise under the second agreement, the Services Contract,

which does not have an arbitration provision.  (*See id.*).  But, such a determination of whether the case is arbitrable or not is beyond the scope of the Court's limited inquiry to decide if subject matter jurisdiction has been established under section 205.  *See Beiser*, 284 F.3d at 674-75. Based on the Notice of Removal, the pleadings and attachments, including the arbitration provision in the Purchase Order, the Court finds that Alcoa Fjardaal has met its burden to demonstrate that this Court has subject matter jurisdiction over its defense and that its removal of the case was appropriate.  *See Frederico*, 507 F.3d at 193; *see also* 9 U.S.C. § 205.

For these reasons, Silec's motion to remand is denied and the Court will continue on to analyze Alcoa Fjardaal's Motion to Dismiss.

b.  *Alcoa Fjardaal's Motion to Dismiss*

Alcoa Fjardaal has moved to dismiss Silec's Complaint under Rule 12(b)(2) for lack of personal jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (Docket Nos. 4, 5, 11).  Silec maintains that the exercise of personal jurisdiction over Alcoa Fjardaal is appropriate given that the Purchase Order specifies that the parties selected Pittsburgh as the place for the ICC arbitration, chose Pennsylvania law to govern any disputes arising from the Purchase Order and the fact that Alcoa Fjardaal has now engaged Pittsburgh-based counsel and initiated the arbitration proceeding against it in Pittsburgh. (Docket No. 9).  Silec further argues that its allegations are sufficient to withstand the motion to dismiss for failure to state a claim.  (*Id.*).  Alcoa Fjardaal counters that it has no contacts with Pittsburgh and that the exercise of personal jurisdiction over it by this Court would violate the Due Process clause.  (Docket Nos. 5, 11).  Alternatively, Alcoa Fjardaal argues that Silec's Complaint for injunctive and declaratory relief should be dismissed because the Purchase Order

sets forth clear and unmistakeable evidence that the parties agreed that the arbitrators would decide the scope of arbitrable issues. (*Id.*).

### i. Motion to Dismiss under Rule 12(b)(2)

#### 1. Legal Standard

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). If an evidentiary hearing is not held, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."[6] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *D'Jamoos*, 566 F.3d at 102 (quoting same).

#### 2. Analysis

In Pennsylvania, courts are authorized to exercise personal jurisdiction over a defendant to the full extent permitted under the Federal Constitution. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998); *see also* 42 PA. CONS. STAT. § 5322(b). The Due Process Clause protects defendants from binding judgments of foreign states with which the defendants had no significant "contacts, ties, or relations." *Burger King v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe v. Wash.*, 326 U.S. 310, 319 (1945)). Due process requires that a defendant be provided a "fair warning" and a "degree of predictability" regarding how its

---

[6]    The Court notes that it recognizes its authority to order the parties to conduct discovery on contested jurisdictional issues and to hold an evidentiary hearing to permit the parties to present evidence on these issues. Indeed, this Court has ordered both discovery and evidentiary hearings in prior cases where personal jurisdiction has been contested by the parties, *see e.g., Hufnagel v. Ciamacco*, 281 F.R.D. 238 (W.D. Pa. Mar. 20, 2012); *Rychel v. Yates*, 2011 WL 1363751 (W.D. Pa. Apr. 11, 2011). However, neither party in the present case has requested that it be permitted to conduct discovery or that an evidentiary hearing be held on the disputed issue of personal jurisdiction and the Court declines to order the parties to do so *sua sponte* given its analysis of the present motions as is fully set forth herein.

conduct may subject it to legal process and liability in a particular forum. *Burger King*, 471 U.S. at 472.

Personal jurisdiction may be established in accordance with these Constitutional principles through a showing of general or specific jurisdiction.   Only specific jurisdiction is relevant to this matter. "Specific jurisdiction" is "personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  To establish specific personal jurisdiction, a plaintiff must show that a defendant had fair warning that he or she was subject to legal process in a particular state because the defendant had "minimum contacts" with the state. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Burger King*, 47 U.S. at 472).   A court usually determines specific jurisdiction on a claim-by-claim basis. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 318 n. 3 (3d Cir. 2007) (citing *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001)).

The inquiry as to whether specific jurisdiction exists begins with the traditional three-part test. *See Shafik v. Curran*, 1:09-cv-02469, 2010 U.S. Dist. LEXIS 60103, at *9–17 (M.D. Pa. June 17, 2010) (applying the traditional test to a contract dispute between forum and non-forum residents). First, the defendant must have "'purposefully directed' his activities" at the forum. *Burger King*, 471 U.S. at 472 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Helicopteros*, 466 U.S. at 414; *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). And, third, if the prior two requirements are met, courts may consider whether the exercise of jurisdiction "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

18

Alcoa Fjardaal contends that personal jurisdiction has not been established because it is an Icelandic entity which does not conduct any business in the United States and has no contacts with Pittsburgh, Pennsylvania.  (Docket Nos. 5, 11).  Silec argues otherwise, pointing initially to the parties' selection of Pittsburgh, Pennsylvania as the designated place for any arbitration to resolve disputes under the Purchase Order.[7]  (Docket No. 9).  Silec cites persuasive authority from other Circuit and District Courts which hold that it does not offend constitutional principles for a court to exercise personal jurisdiction over a defendant who has agreed to arbitrate a dispute in a certain location, as Alcoa Fjardaal has done here.  (*Id.*).  In its Reply, Alcoa Fjardaal has not directly addressed these opinions but emphasizes that they are not binding authority and that the arbitration clause in this case is distinct from a forum-selection clause.[8]  (*See* Docket No. 11).   It also sets forth two District Court decisions in opposition which are equally non-binding.  (*Id.* at 4).

The Court agrees with the parties that it does not appear that the United States Court of Appeals for the Third Circuit has directly resolved the issue of whether personal jurisdiction may be exercised over a defendant based on its agreement to arbitrate all disputes in a specific venue. However, in *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 261-262 (3d Cir. 2000), the Court of Appeals tangentially addressed the issue, and suggested, in dicta, that a party has likely waived an objection to personal jurisdiction through this type of arbitration clause.[9]

---

[7]    The Court recognizes that litigants are entitled to set forth alternative arguments and even set forth contradictory positions to prosecute or defend a case.  However, the Court fails to see how Silec's invocation of the arbitration provision to buttress its arguments on personal jurisdiction does not undermine its position that the Purchase Order has no bearing on this case.

[8]    (*See* Docket No. 11  ("Silec Cable cites a number of decisions for the proposition that, if a party agrees to arbitrate in a particular forum, that party consents to the jurisdiction of the courts of that forum. Notably, Silec does not cite any decisions that are binding on this Court.")).

[9]    Specifically, our Court of Appeals commented that:

        [w]e of course recognize that, in the event of a dispute between FCFC and Nooter, the contractual agreement between FCFC and Nooter [which featured a

Despite the lack of a binding decision, the Court is convinced by the weight of authority advanced by Silec from the Courts of Appeals for the First, Second, Fifth, Sixth and Eighth Circuits, and the lack of any contrary appellate authority, that the arbitration clause at issue in this case wherein the parties designated Pittsburgh as the appropriate venue for arbitration is a significant factor which counsels in favor of the exercise of personal jurisdiction over Alcoa Fjardaal. *See e.g., Unionmutual Stock Life Ins. Co. of America v. Beneficial Life Ins. Co.*, 774 F.2d 524 (1st Cir. 1985); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 979 (2nd Cir. 1996); *PaineWebber, Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001); *Ford Dealer Computer Servs., Inc. v. Fullerton Motors, LLC*, 42 F. App'x 770, 771 (6th Cir. 2002); and, *St. Paul Fire and Marine Ins. Co. v. Courtney Enterprises, Inc.*, 270 F.3d 621 (8th Cir. 2001). These courts reason that by agreeing to arbitrate in a particular location, the parties have impliedly consented to the jurisdiction of courts in that location for litigation of matters arising out of the arbitration given that those courts have jurisdiction under the FAA to enforce arbitration awards and to compel arbitration. *See id.*

The provisions of the FAA pertaining to agreements falling under the Convention are similar to the rules that apply to domestic arbitrations. *See* 9 U.S.C. § 1, *et seq.* Indeed, federal district courts are granted the authority to enforce arbitration awards under the Convention, 9 U.S.C. § 201, to compel arbitration, 9 U.S.C. § 206 and, the FAA specifies that venue for such actions is appropriate "in such court for the district and division which embraces the place

---

provision wherein the parties agreed to arbitrate in New York] would probably - - and properly -- be regarded as a waiver of objections to judicial jurisdiction as well, whether that jurisdiction was to be exercised by a New York state court or, in the alternative, by a federal court, located anywhere in the United States, with respect to a claim arising under federal law. But the dispute in the case at bar does not involve Nooter, and the FCFC–JOC contract contains no comparable venue-selection provision.

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 261-262 (3d Cir. 2000).

designated in the agreement as the place of arbitration if such place is within the United States," 9 U.S.C. § 204.  Given these provisions of the FAA, parties entering into arbitration agreements under the Convention who designate a location within the United States as the place for arbitration, should reasonably expect that they may be haled into court in the place designated for the arbitration for proceedings related to the arbitration agreement. The same principle applies to the parties to the Purchase Order in this case as it should have been reasonably foreseeable to them that they could be haled into court in Pittsburgh, Pennsylvania for matters related to the arbitration.

Silec also cites to the choice-of-law provision in the same contract wherein the parties agreed to the application of Pennsylvania law to govern all disputes for further support of its position that personal jurisdiction may be exercised over the defendant.  (Docket No. 9; *Purchase Order* at § 4A, ¶ 17)[10].  Alcoa Fjardaal responds that choice-of-law provisions are not dispositive of the disputed issue of personal jurisdiction.  (Docket No. 11).  Alcoa Fjardaal is correct that Third Circuit precedent holds that a clause selecting that the law of a particular state govern disputes does not automatically permit the exercise of personal jurisdiction over a defendant.  *See Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1984).  However, this type of clause is "a factor" which may be considered by courts to determine whether a defendant could reasonably foresee that its acts under the agreement may permit the exercise of jurisdiction over it.  *Id.*  Like the arbitration provision, the parties' designation of Pennsylvania law to govern disputes suggests that Alcoa Fjardaal should have reasonably foreseen that it could be haled into court in Pittsburgh in matters related to the arbitration provision in the Purchase Order.

---

[10]     *See* n.2, *supra*.

In total, considering the effect of both the arbitration clause and the choice-of-law clause together, there is little (or no) doubt that Alcoa Fjardaal had fair warning that it could be sued in Pittsburgh. *See Purchase Order* at §§ 4A, ¶ 17, 4B, ¶ 10.  Of course, the cases teach that fair warning and foreseeability that a suit may be brought against a defendant are not generally sufficient to establish specific personal jurisdiction over it, there must be sufficient facts to demonstrate that the defendant purposefully directed its activities to the forum and the claims in dispute in the litigation must arise out of those activities.  *See Burger King*, 471 U.S. at 472-76. The Court believes that the record is sufficient to find that both of these elements have been established and that the traditional notions of fair play and substantial justice will not be offended by exercising personal jurisdiction over Alcoa Fjardaal in this case.  *Id.*

Initially, Alcoa Fjardaal's position that it has had no contacts with the Commonwealth of Pennsylvania is not credible.  (*See* Docket No. 5).  It is an affiliate or subsidiary of Aloca, Inc., which is headquartered here in Pittsburgh.  (Docket No. 1-1 at ¶¶ 1, 13, 19). Based on the averments in Plaintiff's Complaint, Alcoa, Inc. has been actively involved since the beginning of the smelter facility project, including that it: consulted with Carnegie Mellon University scientists and engineers on the development of the plant; created the Defendant, Alcoa Fjardaal, as an Icelandic entity to operate the plant; engaged Bechtel to act as an agent to negotiate purchasing contracts on behalf of the Defendant, such as the Purchase Order disputed here; and, controlled some or all of Alcoa Fjardaal's activities in the enforcement of the Purchase Order against Silec. (*Id.* at ¶¶ 19, 21-28, 68, 70, 93-101).  However, the Court need not rely on Alcoa, Inc.'s activities to establish personal jurisdiction over the Defendant, as Alcoa Fjardaal's contacts with the Commonwealth are sufficient in this Court's estimation to demonstrate personal jurisdiction.

Alcoa Fjardaal relies on *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) for the proposition that in contract cases, courts focus on whether the contacts of the defendant with the forum were instrumental in either the formation or breach of the contract. (Docket No. 11). It then highlights that it had no contacts with the Commonwealth during the formation of the Purchase Order or Silec's alleged breach of same and suggests that this decision counsels against a finding of personal jurisdiction. (*Id.*). However, Alcoa Fjardaal noticeably omits later passages in the *GE* decision which undermine its position, including that a defendant's contacts with the forum are not limited to negotiations and breach but also rightfully include any contacts stemming from "resolution of post-contract difficulties" which logically includes post-contract enforcement activities. *General Elec.*, 270 F.3d at 150-51. With respect to enforcement activities, district courts have held that a party's filing of multiple *unrelated* lawsuits within a jurisdiction is insufficient to establish personal jurisdiction over a non-resident defendant. *See Merlino v. Harrah's Entertainment, Inc.*, Civ. A. No. 05-CV-6660, 2006 WL 401847, at *2-3. But, exercising jurisdiction over a non-resident defendant who files a *related* lawsuit within the jurisdiction or, as here, makes an arbitration demand against a non-resident plaintiff, would not undermine these principles. *Id.*

Given same, the record before the Court demonstrates that Alcoa Fjardaal has purposefully directed its post-contract resolution and enforcement activities against Silec toward Pennsylvania. The correspondence between the parties indicates that there were some discussions regarding Silec's potential liability in the fall of 2011. (Docket No. 1-2 at 350; Ex. D to Complaint). It appears that these discussions took place overseas. (*Id.*). However, later, in a March 16, 2012 letter, Alcoa Fjardaal suggested that the parties now had a "dispute" under the Purchase Order and requested that mediation under the dispute resolution provision be held in

Pittsburgh, Pennsylvania.  (Docket No. 1-2 at 350; Ex. D to Complaint).  The letter states that "Pittsburgh, Pennsylvania is the designated venue under the purchase contract" for such mediation. (*Id.*).  Alcoa Fjardaal took this position despite the fact that the dispute resolution provision in the contract does not specify any location for the agreed-upon mediation, but, as is outlined above, this provision only states that *arbitration* would be held in Pittsburgh.  *See Purchase Order* at § 4B, ¶ 10. In July of 2012, Alcoa Fjardaal initiated the ICC arbitration proceeding against Silec in Pittsburgh and is actively litigating that matter.  (Docket No. 1-2).  Through this proceeding, Alcoa Fjardaal seeks to recover damages for Silec's alleged breach of an express warranty in the Purchase Order, which is governed by Pennsylvania law. (*Id.*).  These contacts are purposefully directed to Pennsylvania and Alcoa Fjardaal is now present in Pennsylvania litigating the arbitration.  Further, the instant suit brought by Silec to enjoin the arbitration obviously arises out of or relates to Alcoa Fjardaal's attempted enforcement of the Purchase Order in the ICC arbitration proceeding, which is ongoing in Pittsburgh.

Finally, the Court believes that the exercise of jurisdiction over Alcoa Fjardaal "comport[s] with 'fair play and substantial justice,'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320), because it should have been reasonably foreseeable to Alcoa Fjardaal that it could be haled into court in Pittsburgh to defend its attempted enforcement of the Purchase Order governed by Pennsylvania law in an ICC arbitration that it has initiated here in Pittsburgh. Alcoa Fjardaal has not made any persuasive argument to the Court that the exercise of jurisdiction over it is unreasonable or would offend its right to due process.  (Docket Nos. 5, 11). Indeed, it is clear from Alcoa Fjardaal's own correspondence that it viewed the venue provision more broadly than its counsel now advocates and, consistent with this view, it appears that Alcoa Fjardaal would likely invoke the courts of this jurisdiction in order to compel arbitration if Silec

declines to participate at some point or to enforce any arbitration award that it may win. (*See* Docket No. 1-2 at 350; Ex. D to Complaint); *see also* 9 U.S.C. §§ 201, 204, 206. While it may be undesirable to Alcoa Fjardaal to have to appear here and defend the instant lawsuit, the Court does not believe that it would offend constitutional principles to require it to do so considering all of the facts and circumstances of this case. *See Burger King*, 471 U.S. at 476.

### 3.  Conclusion

Based on the foregoing, Alcoa Fjardaal's motion to dismiss is denied to the extent that it seeks dismissal under Rule 12(b)(2) for lack of personal jursidiction.

### ii.  Motion to Dismiss under Rule 12(b)(6)

The Court last analyzes the main issue in dispute between the parties, i.e., whether this Court or the arbitrators should decide if Alcoa Fjardaal's claims set forth in its arbitration demand are arbitrable. (Docket Nos. 5, 9, 11). In its Complaint, Silec requests that the Court enjoin the arbitration, declare that the dispute is not arbitrable and declare that it has no liability for the fire and explosion at the smelter facility. (Docket No. 1-1). Alcoa Fjardaal moves the Court under Rule 12(b)(6) to dismiss this lawsuit so that the arbitrators can make the determination of whether this dispute is arbitrable while Silec argues that the Court should decide the issue. (Docket Nos. 4, 5).

### 1.  Legal Standard

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of a complaint. The United States Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); *Twombly*, 550 U.S. at 555.  As the Supreme Court made clear in *Twombly*, however, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).  This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

After *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a district court must conduct the following analysis to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1947, 1950); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, 2012 WL 296904 (Apr. 2, 2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

*Twombly* and *Iqbal* have not changed the other pleading standards for a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), and the requirements of FED. R. CIV. P. 8 must still be met. *See Burtch*, 662 F.3d at 220. Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal alterations, citations, and quotations omitted). The Supreme Court has explained that a complaint need not be "a model of the careful drafter's art" or "pin plaintiffs' claim for relief to a precise legal theory" so long as it states "a plausible 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, --- U.S. ---, 131 S. Ct. 1289, 1296 (2011); *see also Matrixx Initiatives, Inc. v. Siracusano*, --- U.S. ---, 131 S. Ct. 1309, 1322 n.12 (2011) (emphasizing that "to survive a motion to dismiss, respondents need only allege 'enough facts to state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570)).

In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Lum*, 361 F.3d at 222. A document forms the basis of a claim if it is *"integral to or explicitly relied upon* in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec.*

*Litig.,* 184 F.3d 280, 287 (3d Cir. 1999) (emphasis in original; internal citations and quotations omitted).

### 2. *Analysis*

The parties do not dispute that the arbitration provision in the Purchase Order falls within the Convention and the FAA. Instead, they question whether Alcoa Fjardaal's claims against Silec in the arbitration demand fall within the Purchase Order and who will make that decision, the Court or the arbitrators. "Federal law applies to the interpretation of arbitration agreements" arising under the Convention. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 154 (3d Cir. 2001) (citation omitted). "If the parties have stipulated that certain disputes will be submitted to arbitration and that the law of a particular jurisdiction will govern the controversy, federal courts will enforce that agreement." *Id.* (citation omitted). "Whether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law." *Id.* (quotation omitted).

When the parties dispute whether a certain matter is arbitrable, that is, to be decided by the arbitrator, the Supreme Court has specified that general state law contract principles are not applied; rather, courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan et al.*, 514 U.S. 938, 945 (1995). "[T]he law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular merits-related dispute is arbitrable' because it is within the scope of a valid arbitration agreement." *Id.* (citation omitted). While federal policy generally favors the arbitration of international commercial disputes, and any doubts concerning the scope of arbitrable issues are typically resolved in favor of arbitration, these principles do not

apply when the parties dispute whether they agreed to submit the question of arbitrability to the arbitrators. *Id.*; *see also General Elec.*, 270 F.3d at 155 ("the international nature of the present litigation does not affect the application of *First Options'* principles.").

The parties to the Purchase Order agreed that Pennsylvania law would govern all disputes as to the interpretation of the agreement. *See Purchase Order* at § 4A, ¶ 17, *supra*, n.2. Thus, in deciding whether there is clear and unmistakable evidence that the parties agreed to submit the question of whether a dispute is arbitrable to the arbitrators, the standard set forth by the Supreme Court in *First Options*, the Court is guided by certain principles of Pennsylvania contract law. *See Shaw Group Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 121-22 (2d Cir. 2003) (looking to "certain principles of New York contract law relevant to whether an arbitration agreement clearly and unmistakably demonstrates that arbitrators rather than the courts are to resolve questions of arbitrability"). Pennsylvania rules of contract interpretation require the court to "ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne University of the Holy Ghost*, 565 Pa. 571, 590-591, 777 A.2d 418 (Pa. 2001). Such intent is to be determined from reading the entire agreement as a whole and "when a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Murphy*, 565 Pa. at 591, 777 A.2d 418 (citations omitted). If the terms of the agreement are unambiguous, the plain meaning of the terms of the agreement will be enforced. *Id.* If the terms are ambiguous, the agreement will be construed against the drafter. *See Gallagher v. Fidelcor, Inc.*, 441 Pa. Super. 223, 657 A.2d 31 (Pa. Super. Ct. 1995) (citation omitted).

Given this authority, it is this Court's duty to ascertain whether the Purchase Order sets forth clear and unmistakable evidence that the parties intended to have the arbitrators decide whether Alcoa Fjardaal's claims are arbitrable. If such evidence is present, the motion to dismiss

must be granted because Silec's claims, at their core, request that this Court decide whether the claims asserted by Alcoa Fjardaal in the arbitration are arbitrable.  If clear and convincing evidence is not found, the Court is obliged to decide the issue of arbitrability.

In accordance with the foregoing contract principles, the Court looks to the language of the agreement to determine the parties' intent.   The relevant portions of the arbitration clause state the following:

> Any claim arising out of or attributable to the interpretation or performance of this AGREEMENT, which cannot be resolved by negotiation shall be considered a dispute within the meaning of this clause.
>
> …
>
> If the dispute has not been resolved …, the Parties agree that the dispute shall and is hereby referred to binding arbitration by three arbitrators. One each shall be selected by the Parties who shall endeavor to agree selection of the third failing, which the third shall be referred to and selected by the International Chamber of Commerce under ICC ("Arbitration").
>
> The Arbitration shall be conducted in accordance with the rules of the ICC and shall be held in Pittsburgh, Pennsylvania and the decision of the Arbitration shall be final and conclusive save where ICC rules permit appeal therefrom.

*Purchase Order* at § 4B, ¶ 10.

The main disagreement between the parties is whether the final clause of this provision which purportedly incorporates the ICC rules into the agreement is sufficient to demonstrate a clear and unmistakable intent that the decision of arbitrability be submitted to the arbitrators. (Docket Nos. 5, 9, 11).  Once again, there is no binding authority from the Supreme Court or the United States Court of Appeals for the Third Circuit directly resolving this issue, and the parties have presented the Court with competing decisions from non-binding courts.  (*See id.*).  For support, Alcoa Fjardaal has cited a host of decisions, including federal appellate opinions, which

have found that the incorporation of arbitration rules is sufficient evidence to demonstrate clear and unmistakable intent by the parties to do so.   (Docket Nos. 5, 11).  In opposition, Silec relies on a single decision by the Court of Common Pleas of Allegheny County, *i.e.*, *Lustfield v. Milne*, 5 Pa. D. & C. 5th 469, 2008 WL 5544410, at *476-83 (C. P. Allghy. Oct. 29, 2008), wherein Judge Wettick determined that the parties' incorporation of the AAA rules of arbitration into their agreement did not clearly and unmistakably evidence intent to submit the issue of arbitrability to the arbitrators.  (Docket No. 9).

The Court will first address *Lustfield* as that case is distinguishable from the instant matter.  The most striking difference between *Lustfield* and this case is that the parties in that action were individuals rather than two sophisticated international commercial entities like the parties in the present case.  *See Lustfield*, 2008 WL 5544410, at *471-72.  As such, the entire analysis of the parties' intent in *Lustfield* must be viewed from the perspective of those individuals.  Indeed, Judge Wettick based his decision, in part, on his findings that there was no "language that clearly informs plaintiff that she could be forced to arbitrate arbitrability" in the agreement and that he could not "assume that plaintiff was aware of or even considered the possibility that the reference to the Commercial Rules of the American Arbitration Association expanded the scope of matters that must be arbitrated."  *Id.* at 480-81.  These two concerns simply fall away when interpreting the agreement between the current parties as both are international corporations who are (or should be) aware of the ICC Rules and understand the effect of incorporating such Rules into their agreement.  *See Gustine Uniontown Assoc., Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc.*, 892 A.2d 830, 839-40 (Pa. Super. Ct. 2012) (Pennsylvania courts enforce the plain language of contracts between sophisticated

commercial entities because such parties are fully capable of fairly negotiating the terms of the contracts with the benefit of legal counsel).

*Lustfield* also appears to be the minority view.[11]   Indeed, federal district courts within Pennsylvania have commented that the majority view is akin to the position which is advocated by Alcoa Fjardaal here.   To this end, the Court in *Way Servs., Inc. v. Adecco N. Am.*, held that "the prevailing rule across jurisdictions is that incorporation by reference of rules granting the arbitrator the authority to decide questions of arbitrability … is clear and unmistakable evidence that the parties agreed to submit arbitrability questions to the arbitrators." *See Way Servs., Inc. v. Adecco N. Am.*, No. 06-CV-2109, 2007 WL 1775393, at *3 (E.D. Pa. Jun. 17, 2007); *see also Insurance Newsnet.com, Inc. v. Pardine*, No. 1:11-CV-00286, 2011 WL 3423081, at *3 (M.D. Pa. Aug. 4, 2011).   A review of the decisions cited by Alcoa Fjardaal confirms that courts have largely followed this rationale and held that the parties' act of incorporating the rules for AAA domestic arbitrations constitutes clear and unmistakable evidence that the arbitrators should make the determination as to the scope of claims.   *See e.g., Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

Many courts have additionally recognized that this principle is even stronger in reference to an arbitration agreement incorporating ICC Rules, given that ICC Rules *require* the arbitrators to determine whether a claim is arbitrable if that issue is raised by one of the parties.   *See e.g., Shaw Group Inv. v. Triplefine Intern. Corp.*, 322 F.3d 115, (2d Cir. 2003); *Apollo Computer, Inc.*

---

[11]   The Court further notes that *Lustfield* is non-binding because it is a decision of the Court of Common Pleas of Allegheny County, rather than a decision of Pennsylvania intermediate appellate courts, which are persuasive authority, or the Supreme Court of Pennsylvania, which may be binding on federal courts with respect to certain state law issues.   *See Jewelcor Inc. v. Karfunkel*, 517 F.3d 672, n.4 (3d Cir. 2008).

*v. Berg*, 886 F.2d 469, 472-73 (1st Cir. 1989).   To this end, Article 6(3) of the ICC Rules provides that:

> [i]f any party against which a claim has been made does not submit an answer, or raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitration tribunal, unless the Secretary General refers the matter to the [International Court of Arbitration of the International Chamber of Commerce] for its decision pursuant to Article 6(4).

ICC Rules art. 6(3) (2012).   Therefore, by incorporating the ICC Rules into their agreement, the parties to a contract have necessarily agreed to the procedures set forth in those Rules which specify that the arbitrators or the International Court of Arbitration of the International Chamber of Commerce will decide the issue of the jurisdiction of the arbitrators, i.e., whether the dispute is arbitrable.  *See Shaw* 322 F.3d 115; *see also Apollo Computer,* 886 F.2d at 472-73.  The Court is persuaded by this analysis and will follow it in this case.

In addition, the broad, unlimited and unambiguous language used by the parties in the arbitration clause clearly and unmistakably convinces this Court that the parties intended that the arbitrator decide the scope of any claims rather than a court of law.  Again, the provision states, in relevant part, that "***[a]ny claim arising out of*** … ***the interpretation*** or performance ***of [the Purchase Order]*** … ***shall and is hereby referred to binding arbitration*** … conducted in accordance with the rules of the ICC." *Purchase Order* at § 4B, ¶ 10 (emphasis added).  With respect to the first clause, Pennsylvania courts have long recognized that phrases such as "arising out of" are given broad construction under the law. *See Dodds v. Pulte Home Corp.*, 909 A.2d 348, 350-51 (Pa. Super. Ct. 2006) (citing *Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635,

637 (Pa. Super. Ct. 1998)) (noting that phrase "arising out of" was "very broad").  The United States Court of Appeals for the Third Circuit has likewise held that "[w]hen phrases such as 'any claim arising out of' appear in an arbitration provision, they are given a broad construction, and typically suggest that a given dispute is within the scope of an arbitration provision." *Townsend v. Pinnacle Entertainment*, Inc., 457 F. App'x 205, 208-09 (3d Cir. 2012) (citing *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000)).  As such, the parties' use of "any claim arising out of" the Purchase Order is broad enough to encompass every conceivable claim related to their agreement and suggests that the present dispute is properly decided by the arbitrators. *See id.*

The next portion of the clause demonstrates the intent of the parties to have the arbitrator engage in the "interpretation" of the Purchase Order.  The plain meaning of the term "interpretation" is "the process to determine what something, especially the law or a legal document, means." BLACK'S LAW DICTIONARY, "interpretation" (9th ed. 2009).  It is the court that is normally obligated to interpret and analyze contracts and decide the meaning of its terms and conditions.  But, by including this language, the parties tasked the arbitrators with determining the meaning of the Purchase Order in relation to "any claims arising out of" it, which necessarily includes the scope of the claims and whether they are arbitrable.[12] *Purchase Order* at § 4B, ¶ 10.  The final clause is an explicit referral of all of the parties' disputes concerning the interpretation of the Purchase Order to binding arbitration in accordance with the ICC Rules – which the Court has already held is clear and unmistakable evidence that the parties

---

[12]     The Court notes that the arbitration clauses in *Shaw* and *Apollo* did not contain an explicit statement that the interpretation of the agreement was to be determined by the arbitrator but both courts still concluded that the arbitrators would decide the issue of arbitrability.  To this end, in *Shaw*, the parties agreed that "[a]ll disputes between you [Triplefine] and us [Stone & Webster2] concerning or arising out of this Agreement shall be referred to arbitration to the International Chamber of Commerce, New York, New York, in accordance with the rules and procedures of International Arbitration." *Shaw*, 322 F.3d at 120.  Likewise, in *Apollo*, the provision stated that "[a]ll disputes arising out of or in connection with this Agreement which cannot be settled by discussion and mutual accord shall be finally settled by arbitration, in accordance with the rules of arbitration of the International Chamber of Commerce" *Apollo*, 886 F.2d at 474.

desired that the arbitrability of all disputes be determined by the arbitrators. *Id.* In all, the Court finds that the language used in the parties' agreement constitutes a broad grant of authority to the arbitrator to interpret the Purchase Order in the manner prescribed by ICC Rules. *See id.*

The Court is also mindful of the principle that it should consider the entire agreement, as a whole, and interpret it consistently. *See Murphy*, 565 Pa. at 591. The Purchase Order at issue contains extensive terms and conditions. (*See generally Purchase Order* Docket No. 1-1 at 59-93). Having reviewed the contract in its entirety, the Court finds that there are simply no terms or conditions which would indicate or suggest that the parties had agreed that *any* aspects of their disputes should be litigated in a court of law. (*Id.*). Instead, the parties here carefully constructed a framework for the resolution of *any* of their disputes through a three-step process consisting of: first, negotiation between company executives; second, formal mediation between the parties; and, if all else fails, arbitration under ICC Rules. *Purchase Order* at § 4B, ¶ 10.

Finally, because the Court has found clear and unmistakable evidence that the parties intended to submit the issue of arbitrability to the arbitrators, federal policy strongly favors the arbitration of international commercial disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 631 (1985); *see also First Options*, 514 U.S. at 944. Thus, the Court will leave for the arbitrators to decide the scope of arbitrable claims and the merits of the parties' disputes.

### 3. Conclusion

In light of the preceding analysis, the Court finds that Silec has failed to state a plausible claim upon which the Court could grant it the relief it requests in this case, i.e., an injunction blocking the ICC arbitration; a declaration that Alcoa Fjardaal's claims are not arbitrable; or, a declaration that it has no liability to Alcoa Fjardaal. *See Seus v. John Nuveen & Co.*, 146 F.3d

175, 179 (3d Cir. 1998) ("If all of the claims involved in an action are arbitrable, a court may

dismiss the action").   Accordingly, Defendant's Motion to Dismiss under Rule 12(b)(6) will be

granted and Silec's Complaint will be dismissed, with prejudice.

V.   CONCLUSION

Based on the foregoing, Silec's Motion to Remand [7] is denied and Alcoa Fjardaal's

Motion to Dismiss [4] is granted.   As such, Silec's Complaint [1-1] will be dismissed, with

prejudice.   An appropriate Order follows.


*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge


Date:   November 26, 2012

cc/ecf:  All counsel of record.